PIETRO CABOARA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Caboara v. Commissioner
Docket No. 5578-76.
United States Tax Court
T.C. Memo 1977-355; 1977 Tax Ct. Memo LEXIS 85; 36 T.C.M. (CCH) 1420; T.C.M. (RIA) 770355; October 5, 1977, Filed Robert E. Hunter, for the petitioner. John E. Lahart, for the respondent. QUEALY
MEMORANDUM OPINION QUEALY, Judge: Respondent determined deficiencies in petitioner's Federal income taxes as follows: Year
Deficiency
1970
$645.00
1971
590.00
1972
111.00
The sole question for decision is whether petitioner is entitled to net operating loss carryback deductions under the provisions of section 172 [1] for the years 1970, 1971 and 1972 as a result of a sale in 1973 of a California on-sale liquor license. *86 All of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. At the time of the filing of the petition herein, Pietro Caboara, hereinafter referred to as petitioner, resided in Oakland, California. Petitioner filed his Federal income tax returns for the years in issue with the appropriate office of the Internal Revenue Service. In 1963, petitioner acquired a 50 percent interest in a partnership which conducted a business of owning and operating a tavern to sell alcoholic beverages to the general public. The partnership did business under the name of the "Tip Club" and conducted its business in Oakland, California. State law required that each partner join in the filing of an application with the State Alcoholic Beverage Commission for an onsale general license authorizing the sale of alcoholic beverages to the public at a specific location. In California it is prohibited by law to sell alcoholic beverages without such a license. The State Alcoholic Beverage Commission approves the issuance of licenses based on the qualifications of the applicants and fitness of the premises. *87 The number of on-sale general licenses issued to each county is fixed by law and based upon population. There have not been any new licenses issued in Alameda County in the past 35 years. Since the number of licenses is fixed, in order to obtain a license, a specific license must be purchased from an existing licensee and the purchaser must be approved by the Alcoholic Beverage Commission. The licenses are valid for a one-year period and are renewable upon payment of a $580.00 annual renewal fee. Once the license is issued to a licensee, it is irrevocable, except for a finding of prohibited conduct on the part of the licensee or failure to pay the renewal fee. When a licensee chooses to cease business he is permitted, under California law, to sell the license at any price a prospective purchaser will pay. The Alcoholic Beverage Commission regulations prohibit the seller from selling alcohol to the general public upon the sale of a liquor license. It is the custom in the tavern business to sell the liquor license and the inventory to the same buyer simultaneously, as the buyer has the privilege to purchase liquor in bulk when the license is conveyed. On December 12, 1973, petitioner *88 and his two partners sold their on-sale general license for $18,500.00 and their entire inventory for $1,907.84 to a Triple "L" NC, Inc.Triple "L" NC, Inc., was not one of the partners of the "Tip Club" partnership. Upon the sale of the license and the inventory, the partnership terminated all business operations and the partnership dissolved. The license and the inventory were the only assets owned by the partnership. The partnership and the partners did not claim or deduct on their respective returns, for all years of business operations, any amount for depreciation or amortization in respect to the license. For each of the years 1970 through 1972, petitioner reported on his respective Federal income tax returns his share of partnership income. The filing of the partnership return of income for the calendar year 1973 of the three partners of "Tip Club" including petitioner, constituted the filing of the final partnership return. The petitioner realized a loss of at least $14,917.45 on account of the sale of the license by the partnership. On January 1, 1974, petitioner filed an application for tentative refund from carryback of a net operating loss for the years 1970, *89 1971 and 1972. The amounts of net operating loss carryback and taxes claimed for refund are as follows: Amount Claimed Net
Amount Taxes Claimed Carryback to
Operating Loss
As A Result of Year
Carryback
Carryback
1970
$ 5,490.00
$ 645.00
1971
5,862.74
590.00
1972
3,564.71
111.00
Total
$14,917.45
$1,346.00
On May 6, 1974, respondent allowed the tentative application for refund of taxes and refunded the full amount claimed together with the statutory interest. Subsequently, respondent, in the statutory notice of deficiency, disallowed the carryback deductions claimed by petitioner and allowed a capital loss carryover from 1973. Respondent contends that the liquor license was a capital asset within the meaning of section 1221 held for more than six months and the sale of the license resulted in a capital loss. Petitioner's position is that the loss incurred from the 1973 sale was an ordinary loss and the net operating loss deductions taken in 1970, 1971 and 1972 were correct. Petitioner contends the loss resulting from the sale of the liquor license was an ordinary loss by virtue of the Corn Products' doctrine. See . *90 A capital asset is defined in section 1221 as "property held by the taxpayer (whether or not connected with his trade or business) * * *" with certain enumerated exceptions. The on-sale license issued by the State Alcoholic Beverage Commission is property held by the petitioner in connection with his trade or business, which does not fall within any of the exceptions listed in section 1221. Accordingly, by definition the liquor license is a "capital asset." Petitioner seeks to invoke a nonstatutory exception to the general definition of section 1221 property under the doctrine of Admittedly, there have been cases following , pursuant to which property, which would otherwise qualify as a capital asset within the meaning of section 1221, has been treated differently due to the particular circumstances which led the taxpayer to acquire such property in the first instance. See ; ; *91 . Such circumstances are not present in the case before the Court. Under the circumstances which existed in the State of California, a liquor license was a prerequisite for engaging in the sale of alcoholic beverages. The acquisition by petitioner of the license to sell alcoholic beverages to the general public was analogous to a franchise. Due to the limitation of the issuance of such licenses, a license could be obtained only by purchasing the license of an existing licensee. The license was not subject to depreciation. Its term was subject to renewal. The license was a valuable asset which could be sold in the event petitioner and his partner decided to cease doing business, but is no more related to the recurring cost of engaging in the business than is any other occupancy permit, health permit, or retailer's license required to engage in a business. Since the license meets the definition of a capital asset under the provisions of section 1221, the loss sustained by petitioner on the sale of the license was a capital loss. Accordingly, the Court must sustain the respondent's determination. *92 Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩